**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------x
HELEN ENOBAKHARE AND
WILLIAM ENOBAKHRE

                                                  **COMPLAINT**
                                                  **FOR**
                  Plaintiffs,            **WRONGFUL DEATH**


        -against-

                                                          Jury Trial: x Yes No

ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL,:
JOHN DOES 1-10 (FICTIOUS NAMES REPRESENTING
UNKNOWN INDIVIDUALS), JANE DOES 1-10 FICTICIOUS
NAMES REPRESENTING UNKNWN INDIVIDUALS)
ABC CORPORATION (FITICIOUS NAMES REPRESENTING
UNKNOWN ENTITIES),
THE YELLOW CAB COMPANY AND ADAM TYUS.

                               Defendants.
-------------------------------------------------------x

This action is brought for wrongful death and diversity pursuant to:

X 28 U.S.C. § 1332

X New Jersey State Statute § 59 1-1 et. Seq.

**I.**      **Parties in this Complaint:**

Plaintiff: Helen Enobkhare: 1245K Street SE, Washington, DC 20003

Plaintiff William Enobkhare: 91 New Lane, Staten Island, NY 10305

Defendants: Robert Wood Johnson University Hospital, One Robert Wood Johnson Place, New Brunswick, NJ 08901, John Does 1-10 (Unknown), Jane Does 1-10 (unknown), ABC Corporation (Unknown), The Yellow Cab Company, 121 Jersey Avenue, New Brunswick, NJ 08901, Adam Tyus, c/o Yellow Cab Company, 121 Jersey Avenue, New Brunswick, NJ 08901.

## AS FOR A FIRST CAUSE OF ACTION
## WRONGFUL DEATH AND NEGLIGENCE

1. That from the period of about December 10th, 2013, through December 15th, 2013, (:hereinafter at all times relevant") the deceased, Patience Enobkhare, was a patient at Robert Wood Johnson Hospital in New Brunswick, New Jersey for Thyroidism and was treated as an inpatient.

2. That the deceased was advised that her condition was improving due to the various medication given and was taken off of most of the medication which had been prescribed for her Thyroidism in about January of 2014. Moreover, the deceased was advised that some of the prescribed medication she was given for her Thyroidism could cause her harm, and, therefore, she was taken off of these medications. The deceased was also advised that her health was good and that her Thyroidism was under control and doing fine.

3. That the deceased had noticeably swollen legs during the time of her treatment as a patient of Robert Wood Jonson University Hospital in December of 2013, as well as throughout her follow up treatments up to and including through March of 2014. However, the deceased was never treated for her swollen legs nor any illness related to her swollen legs. Moreover, the reason for the deceased's swollen legs was never diagnosed.

4. That on or about March 5th, 2014, the deceased went to Robert Wood Johnson University Hospital to receive an x-ray and for blood work as a result of her primary care physician noticing her swollen legs during her visit in March of 2014, and her primary care physician being informed by the deceased that her swollen legs had been chronic since about December of 2013. However, the deceased was kept as an inpatient for four days due to a miscommunication on the part of hospital staff and her swollen legs were not x-rayed and the proper blood work was not done. Moreover, the deceased was not treated for any new illness and was not diagnosed with any new illness.

5. That even though the deceased legs were swollen from December 10th, 2013, through her discharge as an inpatient on March 9th, 2014, the deceased's legs were not examined, diagnosed or treated. Moreover, the deceased had not been treated nor diagnosed with arthritis, heart trouble, hypertension, high cholesterol, kidney disease or any other illness associated with chronic swollen legs.

6. That the deceased was discharged from Robert Wood Johnson University Hospital on March 9th, 2014, even though her legs were still swollen; her primary care physician had sent her to Robert Wood Johnson University Hospital for x-rays on her legs and blood work to determine the reason for her chronic swollen legs; and with no explanation for her swollen legs.

7. That Robert Wood Johnson University Hospital, the doctors who admitted, treated and discharged the deceased, the staff and affiliates of Robert Wood Johnson University Hospital knew or should have known that there was a medical reason for the decedent's chronic swollen legs ; her primary care physician's concern about her chronic swollen legs; and that failure to diagnose and treat the deceased for the cause of her chronic swollen legs would result in serious harm or death.

8. That Robert Wood Johnson University Hospital had an obligation to exam the decedent's legs and diagnose the reason for the chronic swelling, but failed to do so to the detriment of the deceased.

9. That had Robert Wood Johnson University Hospital; the doctors who admitted, treated and discharged the deceased; and the staff of Robert Wood Johnson University who examined, diagnosed and treated the deceased chronic swollen legs in December of 2013, or in March of 2014, the deceased would not have died from the illness that caused the deceased's heart failure.

10. That the doctors who treated the deceased at Robert Wood Johnson University

Hospital advised that the deceased's Thyroidism was improving and was under control in December of 2013, and again in March of 2014.

11.  That if the deceased's Thyroidism was getting worse, the deceased should have been so informed and the treatment for any decrease in the deceased's Thyroidism should have been reflected in her medical records and treatment. Moreover, any change in the deceased condition should have been noted in her discharge papers.

12.  That the deceased's treatment for her Thyroidism did not change in March of 2014, while she was an inpatient at Robert Wood Johnson University Hospital.

13.  That the doctors who admitted and discharged the deceased in March of 2014, as well as the doctors who were treating her Thyroidism at Robert Wood Johnson University Hospital and Robert Wood Johnson University Hospital should have realized that the deceased's chronic swollen legs was not related to her Thyroidism as this illness was deemed improving and under control, and should have ran the requested tests to determine the cause for the deceased chronic swollen legs.

14.  That the deceased should have been informed that her chronic swollen legs could lead to other serious health issues while she was under the care and treatment of Rbert Wood Johnson University Hospital and its staff and affiliates.

15.   That as a direct and proximate cause of Robert Wood Johnson University Hospital and the doctors who treated the deceased from December 2013, through March 2014, the deceased died of heart failure because her chronic swollen legs were never treated; the cause of her chronic swollen legs was never diagnosed. It can reasonably inferred that the blood from the deceased's heart was not properly flowing through her body and her heart stopped; that the veins in the deceased legs were blocked; that the deceased had hypertension; or that the

deceased had some other illness which caused her heart attack. Alternatively, it is reasonable to conclude that the deceased's Thyroidism was not properly treated and diagnosed and this caused the deceased's death.

16. That this claim is made, presented and brought pursuant to 28 USC § 1332 and New Jersey Statute § 59: 1-1 et. seq.

17. That as a result of the negligence of Robert Wood Johnson University Hospital, its staff and affiliates, the deceased died on March 14th, 2014, due to heart failure.

18. That on or about March 19th, 2014, the deceased's son William Enobkhare, contacted Robert Wood Johnson University Hospital and its coroner regarding the fact that Robert Wood Johnson University Hospital had repeatedly reported from December 2013, through March 2014, that the deceased's Thyroidism had been improving with the prescribed medication and was under control; that most of the prescribed medication for the deceased's Thyroidism had been stopped, some because it had potential negative effects; that the deceased's health was in good condition; that the autopsy occurred after the deceased had been embalmed; that the deceased had been embalmed prior to asking her family whether they wanted an autopsy; and that the deceased's doctors at Robert Wood John University Hospital had repeatedly reported that the deceased's health was in good condition from December 2013, through March 2014. William Enobkhare also noted that Robert Wood Johnson University Hospital had not run any tests to determine the reason for the deceased's chronic swollen legs contrary to the request of the deceased primary care physician; and that Robert Wood Johnson University Hospital had not expressed any concern about the deceased's chronic swollen legs or noted any negative effects her chronic swollen legs could have on her health.

19. That more than one year has passed since William Enobkhare contacted Robert Wood

Johnson University Hospital regarding the autopsy report claiming that the deceased died due to her Thyroidism and Robert Wood Johnson University Hospital's failure to treat, diagnose and examine the deceased's chronic swollen legs while she was under the care and treatment of Robert Wood Johnson University Hospital.

20. That at all times relevant, the deceased was a patient at and under the care of Robert Wood Johnson University Hospital.

21. That Robert Wood Johnson University Hospital, the doctors who treated and cared for the deceased, and the staff and affiliates of Robert Wood Johnson University Hospital, created the deceased health risk by failing to properly exam, diagnose and treat the cause and reason for the deceased's chronic swollen legs, Thyroidism, and/or other illness which led to the deceased having heart failure.

22. That Robert Wood Johnson University Hospital, the doctors who treated, admitted and discharged the deceased failed to inform the deceased of the health risks associated with chronic swollen legs; and the illnesses related to the failure to treat this condition and her Thyroidism, including heart disease, kidney failure, kidney disease, clogged veins and other illnesses could cause.

23. That Robert Wood Johnson University Hospital and the doctors who treated the deceased failed to notice and detect the deceased's chronic swollen legs, and other potential illnesses which caused the deceased death for three consecutive months.

24. That as a result of Robert Wood Johnson University Hospital, its staff and affiliates failure to properly treat and diagnose the deceased, the deceased died of heart failure.

25. That Robert Wood Johnson University Hospital's business is to treat, diagnose, and heal patients, but failed to do so regarding the deceased.

26. That the defendant, Robert Wood Johnson University Hospital is, and at all times relevant was, a business organizing and existing under the laws of the State of New Jersey.

27. That at all times relevant, the deceased was a resident of the State of New Jersey, County of Middlesex.

28. That at all times relevant, the plaintiff William Enobkhare was a resident of the State of New York, County of Richmond.

29. That at all times relevant, the plaintiff, Helen Enobkhare, was a resident of the District of Columbia.

30. That defendant, Yellow Cab Company is and at all times relevant, was a business organizing and existing under the laws of the State of New Jersey.

31. That at all times relevant, the defendant, Adam Tyus was a resident of the State of New Jersey.

32. That the business conduct of Robert Wood Johnson and the Yellow Cab Company violated their own policies and procedures.

33. That Adam Tyus caused the deceased to become overly agitated, anxious, confused, to hyperventilate and become overly excited by taking her to an unfamiliar, dark and uncomfortable roadway in her town even after she requested that he take the same road he took earlier on the day in question.

34. That such agitation and excitement caused the deceased heart to fail.

35. That defendant, Adam Tyus, failed to follow the routine road used by cab drivers, including himself, taking passengers to and from the shopping mall to and from the deceased's neighbourhood which is the route he used to take the deceased to the shopping mall earlier in the day.

36. That Adam Tyus created the anxiety, agitation, confusion, excitement, hyperventilation, and, ultimately the heart failure of the deceased by failing to take the deceased home using the regular road used by cab drivers and the one he used earlier in the day to take the deceased to the shopping mall.

37. That the regular road used by cab drivers to take the deceased from the shopping mall to her home and to the shopping mall was open, known to Adam Tyus and available to use.

38. That the deceased was a customer of the Yellow Cab Company and under the care of the Yellow Cab Company and its employee, Adam Tyus.

39. That by the negligence, carelessness, omissions, and total disregard of the Yellow Cab Company and Adam Tyus's caused the deceased to suffer severe anxiety, confusion, agitation, to hyperventilate, become excited and ultimately to suffer heart failure and die.

40. That Adam Tyus failed to inform the deceased that he was going to take another road to the deceased's home when she entered his cab which caused the deceased to become extremely anxious, nervous, confused, excited and to hyperventilate. Moreover, the deceased became so nervous and anxious that she jumped out of the cab leaving her purse and groceries, and ran into the street and jumped into the car of a stranger who had the police call an ambulance due to the deceased hyperventilating.

41. That as a direct and proximate result of Adam Tyus' failure to take the regular road which the deceased was familiar and comfortable even after the deceased requested that Adam Tyus take the regular road, the deceased suffered severe anxiety, agitation, confusion, excitement, to hyperventilate and to suffer heart failure.

42. That at all times relevant, Adam Tyus was employed by defendant, Yellow Cab Company as a cab driver and was acting as a cab driver for the Yellow Cab Company.

43. That Adam Tyus failed to recognize that the deceased was anxious, confused, hyperventilating, agitated, nervous and excited by his failure to take the road familiar, lighted and comfortable to the deceased even after he was directed to take this regular road.

44. That as a direct and proximate result of the defendants, Adam Tyus and the Yellow Cab Company's negligence, carelessness, omission and willful disregard, the deceased suffered heart failure and died.

45. That the defendants have failed to compensate the plaintiffs for their loss and the plaintiffs claims remain unsatisfied.

46. That at all times relevant to the events described herein, defendants John Does 1-10, Jane Does 1-1 ABC Corporations 1-10 had knowledge that the deceased's chronic swollen legs were not diagnosed, treated or detected and that the deceased would suffer heart failure due to her chronic swollen legs and the severe anxiety, confusion, agitation, hyperventilating and excitement the deceased suffered as a result of her being driven on an unfamiliar and uncomfortable road.

47. That as a direct and proximate result of the negligence, carelessness inattention, omissions, willful disregard and/or otherwise wrongful conduct of the named defendants herein, the survivors of the plaintiff, deceased, as set forth above, have suffered pecuniary and other injuries, including but not limited to companionship, love, advice and guidance.

48. That as a result of the negligence, carelessness, inattention, omissions, willful disregard and/or otherwise wrongful conduct of the herein named defendants, the deceased, Patience Enobkhare was caused to live in great pain before her death.

49. That by reason of the foregoing, plaintiffs sustained serious emotional injuries and damages in the amount in excess of the monetary jurisdictional limits of any administrative court which would otherwise have jurisdiction, in an amount to be determined upon the trial of this action.

50. That the acts of the defendants have been so outrageous that punitive damages are due up to and including attorneys' fees and costs.

**WHEREFORE**, Plaintiffs demands actual and punitive judgment against the Defendants, the amount sought on each Cause of Action exceeding the monetary jurisdictional limits of any and all administrative courts which would otherwise have jurisdiction, in amounts to be determined upon the trial of this action, together with the costs and disbursements of this action, and with interest from the date of the initial incident.

Dated: New York, New York
March 11, 2016

                                              Yours, etc.,

                                              /s/ Antoinette M. Wooten, Esq. AW0814
                                              c/o Florestal Law Firm, PLLC
                                              116 West 23rd Street, Ste. 500
                                              New York, New York 10011

.